# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

————————————

Nº 08-CV-2217 (JFB) (WDW)

————————————

PATHMARK, INC., WALDBAUMS, INC. and THE FOOD EMPORIUM,

Plaintiffs,

VERSUS

UNITED FOOD AND COMMERCIAL WORKERS UNION, LOCAL 342,

Defendant.

————————————

**MEMORANDUM AND ORDER**
September 3, 2009

————————————

JOSEPH F. BIANCO, District Judge:

Plaintiffs Pathmark, Inc. (hereinafter, "Pathmark"), Waldbaum, Inc. (hereinafter, "Waldbaum") and The Food Emporium (hereinafter, "Food Emporium") (collectively, "plaintiffs") brought this action against United Food and Commercial Workers, Local 342 (hereinafter, "Local 342" or "defendant" or "the Union"), alleging defamation and tortious interference with prospective business relations. Specifically, this lawsuit arises from Local 342's alleged actions during the week prior to Memorial Day 2008, and through Memorial Day weekend, in allegedly distributing defamatory handbills at a number of supermarkets operated by plaintiffs, and by allegedly publishing defamatory statements on defendant's website which, *inter alia*, suggested that customers should not buy frozen hamburger patties.

Defendant now moves for dismissal of the complaint, pursuant to Rule 12 of the Federal Rules of Civil Procedure. For the reasons set forth below, the Court concludes that, because the issues raised in this lawsuit in the tortious interference claims are arbitratable under the Collective Bargaining Agreements between the parties, and because plaintiffs have agreed to arbitrate the same issues raised in the defamation claim before the National Labor Relations Board ("NLRB") – namely, whether Local 342 members were involved in protected union activity/conduct while distributing the handbills – this lawsuit should be stayed to allow the arbitration procedure contained in the Collective Bargaining Agreements between the parties, and the arbitration as agreed by plaintiffs pursuant to the deferral of the parties and the NLRB, and

any subsequent proceedings before the NLRB, to be completed.[1]

## I. BACKGROUND

### A. Facts

The following facts are taken from the amended complaint ("Am. Compl.") and are not findings of fact by the Court. The Court assumes these facts to be true for the purpose of deciding this motion and construes them in the light most favorable to plaintiffs, the non-moving party.

Local 342 is the exclusive bargaining representative for the non-supervisory employees who work in the meat and seafood departments of Waldbaum, Food Emporium and Pathmark stores. (Am. Compl. ¶ 2.) Plaintiffs are parties to collective bargaining agreements ("CBAs") with Local 342 which provide, among other things, that during the length of the agreement, there shall be no strikes. (*Id.* ¶ 4.)

According to the complaint, on May 23, 2008, Local 342, through its representatives and agents, distributed leaflets to plaintiffs' customers, "including: (a) customers at Pathmark's stores located in Inwood, Manhattan, Ozone Park, Queens, Holbrook, Long Island, and the store located on Forest Avenue in Staten Island; (b) customers at

Waldbaum's stores located in Valley Stream, Long Island and on the store located on Ralph Avenue, Brooklyn; and (c) customers at the Food Emporium store located at 68th Street and Broadway in Manhattan," containing allegedly false and defamatory statements. (*Id.* ¶ 5.) Specifically, the leaflets stated:

**ATTENTION CUSTOMERS! IMPORTANT MESSAGE TO CUSTOMERS OF PATHMARK FROM UFCW LOCAL 342**

This is a holiday message from the members of UFCW Local 342 who serve you each day in the Meat, Seafood and Deli Departments of this supermarket. While you are shopping for Memorial Day, ask the Meat Department Local 342 members to point out to you the **FRESH CHOP MEAT AND FRESH HAMBURGER PATTIES!**

**WHY BUY FROZEN PATTIES SHIPPED IN FROM WHO KNOWS WHERE? WHO KNOWS HOW LONG THEY HAVE BEEN LAYING AROUND A WAREHOUSE? FROZEN MEAT MAY HAVE BEEN FROZEN FOR YEARS!**

**IF YOU WANT ONE GREAT BURGER THIS HOLIDAY, THEN BUY FRESH HAMBURGER PATTIES THAT YOU CAN SEE BEFORE YOU SPEND YOUR MONEY!**

. . .

And if your family likes having frozen patties available, **BUY FRESH**

---

[1] Although defendants have raised a number of alternative grounds for dismissal, including that the handbill/leaflet in question and website update are not defamatory as a matter of law, the Court declines to address those arguments in light of the pending arbitrations, and the pending matter before the NLRB, and this Court's decision to stay this lawsuit pending completion of those proceedings.

**HAMBURGER PATTIES,** and you can just as easily freeze them yourself! Customers never have to wonder how old **FRESH MEAT AND FRESH HAMBURGER PATTIES** are.

(*Id.* Ex. A) (emphasis in original).

The complaint alleges that the statement "frozen meat may have been frozen for years" is false. (*Id.* ¶ 6.) The complaint further asserts that the statement "customers never have to wonder how old fresh meat and hamburger patties are," infers that customers should worry that frozen patties are old. (*Id.*) In addition, the leaflet allegedly implies that customers should go to the meat department to get fresh meat patties, while certain Pathmark stores do not have that capability. (*Id.*)

According to the complaint, Keith Halpern ("Halpern"), Vice President, Labor Relations at The Great Atlantic & Pacific Tea Company, Inc. (hereinafter, "A&P"), the parent company of plaintiffs, learned that Local 342 was distributing the handbills on the morning of Friday, May 23, 2008. (*Id.* ¶¶ 1, 7.) Halpern then had at least one phone conversation with Lisa O'Leary ("O'Leary"), Executive Vice President and Recording Secretary for Local 342, during which Halpern told O'Leary that the statements in the handbill were false and defamatory and requested that Local 342 cease distributing the handbills or plaintiffs would commence a lawsuit. (*Id.* ¶ 8.) According to the complaint, Local 342 did not cease distributing the handbills, but rather continued its actions throughout the Memorial Day weekend. (*Id.* ¶ 10.)

According to the complaint, on May 25, 2008, Local 342 also posted defamatory and "otherwise tortious" statements on its website, including the following: "This Company has been becoming more and more an anti-Union company. The number of grievances and arbitrations against the A&P is showing this. This is the same Company that **locked out its workers after they made a settlement!**" and "The Company has engaged in 'constant bullying and intimidation' of union members." (*Id.* ¶ 16) (emphasis in the original). The complaint also lists multiple examples and various store sites of Local 342 encouraging plaintiffs' employees to distribute the leaflets while on paid breaks or while scheduled to work. (*Id.* ¶¶ 13-17.)

The complaint alleges that the members of Local 342 authorized or ratified the above-described actions taken by Local 342. (*Id.* ¶ 18.) It further alleges that defendant knew that the statements it made were false or recklessly disregarded whether the statements were true or false, intended to harm plaintiffs by distributing the statements, and did harm plaintiffs by deterring what plaintiffs believe would have been $1,000,000 of lost sales. (*Id.* ¶¶ 21-25.)

B. Procedural History

Plaintiffs filed the complaint in this action on May 27, 2008 in Supreme Court of the State of New York, Nassau County. On June 2, 2008, defendant removed this action to the United States District Court for the Eastern District of New York. On December 11, 2008, plaintiffs filed an amended complaint. On January 23, 2009, defendant filed a motion for dismissal pursuant to Rule 12 of the Federal Rules of Civil Procedure. Plaintiffs submitted their response to the motion on December 5, 2008. On February 23, 2009, defendant submitted its reply. On April 3, 2009, plaintiffs submitted a sur-reply, and, on April 24, 2009, defendant responded to plaintiffs' sur-reply. Oral argument was heard

3

on June 9, 2009. On June 10, 2009, plaintiffs submitted a supplemental letter.[2] On June 25, 2009, defendant submitted Arbitrator Kennedy's Decision and Award, dated June 16, 2009. On June 30, 2009, plaintiffs submitted a letter regarding that June 16, 2009 arbitration award. All of the submissions have been considered by the Court.

## II. STANDARD OF REVIEW

In reviewing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *See Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006); *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir. 2005). The plaintiff must satisfy "a flexible 'plausibility standard.'" *Iqbal v. Hasty*, 490 F.3d 143, 157 (2d Cir. 2007), *rev'd on other grounds sub nom. Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 563 (2007). The Court, therefore, does not require "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

The Supreme Court recently clarified the appropriate pleading standard in *Ashcroft v. Iqbal,* setting forth a two-pronged approach for courts deciding a motion to dismiss. 129 S. Ct. at 1937. The Court instructed district courts to first "identify[] pleadings that, because they are no more than conclusions,

are not entitled to the assumption of truth." *Id.* at 1950. Though "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* Second, if a complaint contains "well-pleaded factual allegations[,] a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 1949 (quoting and citing *Twombly*, 550 U.S. at 556-57) (internal citations omitted).

In connection with a motion to dismiss under Rule 12(b)(6), the Court generally may consider "facts stated in . . . documents attached to the complaint as exhibits or incorporated by reference." *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir. 2005); *accord Kramer v. Time Warner Inc.*, 937 F.2d 767, 773 (2d Cir. 1991). In addition, the Court also may take judicial notice of public filings, including charges filed with the NLRB and NLRB decisions, on a Rule 12(b)(6) motion. *See Kavowras v. N.Y. Times Co.*, 328 F.3d 50, 57 (2d Cir. 2003) (holding that district court properly took judicial notice of NLRB charge in context of Rule 12(b)(6) motion to dismiss); *see also County Vanlines Inc. v. Experian Info. Solutions, Inc.*, 205 F.R.D. 148, 154 (S.D.N.Y. 2002) (taking judicial notice of NLRB decisions).

## III. DISCUSSION

Defendant contends that plaintiffs' claims for tortious interference with prospective business relations are subject to the arbitration

---

[2] Defendant objected to plaintiffs' supplemental submission, but the Court has fully considered the letter.

provision in the CBAs between the parties, and, therefore, should not be before this Court. Defendant further contends that plaintiffs' defamation claim falls within the scope of the arbitration currently pending before the NLRB and, therefore, the Court should abstain from considering the claim. For the reasons set forth below, the Court agrees.

"Federal policy strongly favors arbitration as an alternative dispute resolution process." *Collins & Aikman Prods. Co. v. Building Sys., Inc.*, 58 F.3d 16, 19 (2d Cir. 1995). "[W]here the contract contains an arbitration clause, there is a presumption of arbitrability . . . . Such a presumption is particularly applicable where the clause is [] broad . . . . In such cases, 'in the absence of any express provision excluding a particular grievance from arbitration, we think only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail.'" *AT&T Tech., Inc. v. Commc'n Workers of Am.*, 475 U.S. 643, 650 (1986) (quoting *Un. Steelworks of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-85 (1960)). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration. Accordingly, federal policy requires us to construe arbitration clauses as broadly as possible. We will compel arbitration unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Collins*, 58 F.3d at 19 (internal quotations and citations omitted).

As a threshold matter, the Court must determine whether the arbitration provisions at issue are broad or narrow. *Prudential Lines, Inc. v. Exxon Corp.*, 704 F.2d 59, 63 (2d. Cir. 1983). The arbitration provisions between the parties apply specifically where

"differences arise between the Union and its members and the Employer as to the interpretation, application or enforcement of any of the provisions of this Agreement, except differences which arise involving contributions to the Welfare, Pension, Annuity, Safety-Education-Cultural or Legal Funds." (O'Leary Aff. Ex. 2 at 21, Ex. 3 at 31, Ex. 4 at 33.) As the provision covers almost all issues arising out of the agreements, it is clearly broad. Therefore, the following analysis applies:

> [I]f . . . the dispute is in respect of a matter that, on its face, is clearly collateral to the contract, then a court should test the presumption [of arbitrability] by reviewing the allegations underlying the dispute and by asking whether the claim alleged implicates issues of contract construction or the parties' rights and obligations under it. If the answer is yes, then the collateral dispute falls within the scope of the arbitration agreement; claims that present no question involving construction of the contract, and no questions in respect of the parties' rights and obligations under it, are beyond the scope of the arbitration agreement.

*Collins*, 58 F.3d at 19. The Court looks, however, not to "the characterization of [the claims] in the pleading. Instead we look to the conduct alleged and determine whether or not that conduct is within the reach of the . . . arbitration clause." *Id.* at 20; *see also Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840, 846 (2d Cir. 1983) ("In determining whether a particular claim falls within the scope of the parties' arbitration agreement, we focus on the allegations in the complaint rather than the legal causes of action asserted.

If the allegations underlying the claims touch matters covered by the parties' . . . agreements, then those claims must be arbitrated, whatever the legal labels attached to them.") (internal citation and quotation marks omitted).

## A. Tortious Interference Claims

Defendant contends that plaintiffs' tortious interference claims fall within the scope of the parties' arbitration provisions and, therefore, the Court should refer the claims to arbitration. Specifically, defendant contends that plaintiffs' claims arise out of the No Strike Provisions of the parties' CBAs and, therefore, fall within the scope of the arbitration provisions. The No Strike Provisions all contain the following language:

> There shall be no cessation of work, no strikes, no picketing or other interference with the operation of the employer, or lockouts for any cause whatsoever during the life of this Agreement.

(O'Leary Aff. Ex. 2 at 19; Ex. 3 at 28; Ex. 4 at 29.)

Plaintiffs contend that, because no breach of contract based on the CBAs is alleged, the claims are beyond the scope of the arbitration agreement and should be resolved by this Court. As stated above, however, the Court's review does not rely upon the legal cause of action selected by the plaintiff, but rather looks to the allegations underlying such cause of action. For the reasons set forth below, the Court finds that plaintiffs' tortious interference claims are subject to arbitration.

The amended complaint alleges conduct that clearly falls within the No Strike Provision of the applicable CBAs, even if the plaintiffs do not specifically allege a breach of contract. Specifically, the amended complaint alleges that a strike was conducted and that the union interfered with the operation of plaintiffs' business. The amended complaint states, for example:

> [I]n the Pathmark store located in Centereach, New York in Suffolk County, Local 342 requested that plaintiffs' employees distribute the defamatory leaflets while on their fifteen (15) minute breaks, which are paid breaks. At approximately 11:30 in the morning that day, four employees did, in fact distribute the defamatory leaflets to customers outside the Pathmark Centereach store on store property. Local 342 also instructed employees of Waldbaum and Food Emporium to distribute leaflets while on their paid breaks.

> At the Pathmark store located in Holbrook, New York, at approximately 10:20 in the morning, seven employees who are members of Local 342, which included the meat manager, meat 1st person, shop steward, meat wrapper, deli manager, deli 1st person, and seafood manager, distributed defamatory leaflets while scheduled to work and/or during their paid breaks. In addition, instead of working their scheduled shifts, the seafood 1st person, meat apprentice, and a part-time deli worker distributed the defamatory leaflets to customers outside the Pathmark store in Holbrook while on store property.

> At the Pathmark store located in Shirley, New York, at approximately

10:35 in the morning, several employees who are members of Local 342, followed the directive of the Local 342 shop steward and walked out after having punched in and during their scheduled shifts, not while on a break, to distribute the defamatory leaflets to customers outside the store and while on store property. Other employees, who had already punched out from their shifts that day, also distributed the defamatory leaflets.

. . .

In distributing the defamatory handbills, Local 342 engaged in unlawful activity by engaging in conduct which sought to interfere with business relationships with customers of supermarkets operated under the retail banners of Food Emporium, Pathmark, and Waldbaum, since Local 342 defamed products sold by plaintiffs, thereby hindering sales.

. . .

At Pathmark store number 614 in Patchogue, Suffolk County, New York, from 10:30 in the morning to 12:00 o'clock in the afternoon, twelve employees, who are members of Local 342, distributed the defamatory leaflets to customers in front of the store on store property during their scheduled shifts, *thereby engaging in a strike*.

At Waldbaum store number 465 in North Massapequa, Nassau County, New York, fromo 10:30 in the morning to 1:30 in the afternoon, three to four employees, who are members of Local 342, distributed the defamatory leaflets to customers in front of the store on store property during their scheduled shifts, *thereby engaging in a strike*.

At Waldbaum store number 298 in Melvill, Suffolk County, New York, nine employees, at various times, distributed the defamatory leaflets to customers in front of the store on store property during their scheduled shifts *thereby engaging in a strike*.

(Am. Compl. ¶¶ 12-13, 15, 17) (emphasis added). Moreover, in connection with the causes of action for tortious interference with business relations between plaintiffs and their customers, the amended complaint specifically alleges the following:

The actions of Local 342 have interfered with the relationship between plaintiffs and their customers. Among other things, representatives of Local 342 have intentionally entered into stores operated by Waldbaum and Pathmark and *instructed associates to stop working* even though they were being paid, resulting in the inability of plaintiffs to provide services to its customers. The actions of representatives of Local 342 have resulted in the inability of plaintiffs to provide services to its customers.

(*Id.* ¶ 28) (emphasis added). Based on these paragraphs of the amended complaint, it is plain that plaintiffs are alleging that Local 342 members engaged in a strike and interference with the operation of business, both of which fall within the No Strike Provisions of the agreements, which are subject to arbitration. *See, e.g., Pathmark Stores, Inc. v. United Food and Commercial Workers, Local 342* 204 F. Supp. 2d 500, 502-03 (E.D.N.Y. 2002)

7

(lawsuit brought by plaintiff against Local 342 arising from handbilling at plaintiffs stores was subject to arbitration under the terms of the CBA).

In fact, the initial complaint in this lawsuit included a claim for breach of the No Strike Provision. Although the amended complaint eliminated the breach of contract cause of action, the specific work-stoppage allegations asserted in the original complaint were re-asserted in the amended complaint (as referenced above) and formed the basis for the remaining causes of action, including the tortious interference claims. The nature of the tortious interference claims – namely, that the handbilling constituted a wrongful work stoppage – is also acknowledged in plaintiffs' opposition to the current motion.[3] *(See* Plaintiffs' Opposition Memorandum, at 9 ("By intentionally entering plaintiffs' stores and instructing associates to stop working, even while being paid, Local 342 engaged in dishonest, unfair, and wrongful conduct, thereby interfering with the relationship between plaintiffs and their customers.").) Therefore, although plaintiffs have sought to avoid arbitration by eliminating the claim of breach of the CBA from their complaint, it is the nature of the allegations – not the legal labels to the causes of action – that determine whether the claims are subject to the arbitration provisions. *See, e.g., Collins*, 58 F.3d at 23 ("The mere fact that this is a tort claim, rather than one for breach of the Contracts, does not make the claim any less arbitrable."); *accord Norcom Elec. Corp. v. CIM USA, Inc.*, 104 F. Supp. 2d 198, 204

(S.D.N.Y. 2000). Here, the tortious interference claims, which allege interference with the operation of the employer through, among other things, an unlawful work stoppage, plainly fall within the applicable arbitration provisions. Thus, this Court finds that the tortious interference with business relations claims are subject to arbitration. Plaintiffs' tortious interference claims are questions "for the arbiter, not for the courts," *Warrior & Gulf*, 363 U.S. at 585, and accordingly, the Court stays adjudication of this claim pending arbitration.[4]

## B. Defamation Claim

Defendant contends that a central issue of the defamation claim – whether the activity alleged was protected activity under the

---

[3] Plaintiffs' counsel also confirmed at oral argument that tortious interference with the operation of the employer was being alleged by the amended complaint. (*See* Transcript of Oral Argument, June 9, 2009, at 23.)

[4] The Court exercises its discretion to stay adjudication of the claim, rather than dismiss it, because "[t]he Second Circuit has made it clear that in order to further the 'liberal policy favoring arbitration agreements,' a district court should ordinarily grant a stay when it decides that a dispute must be arbitrated, rather than dismissing the action and thereby triggering appeal rights and the delay attendant to such appeals." *Patrowicz v. Transamerica Homefirst, Inc.*, 359 F. Supp. 2d 140, 160 (D. Conn. 2005) (citing *Salim Oleochemicals v. M/V Shropshire*, 278 F.3d 90, 93 (2d Cir. 2002)); *see also Halim v. Great Gatsby's Auction Gallery*, 516 F.3d 557, 561 (7th Cir. 2008) ("[T]he proper course of action when a party seeks to invoke an arbitration clause is to stay the proceedings rather than to dismiss outright."); *Brown v. Coca-Cola Enter., Inc.,* No. 08-CV-3231 (JFB), 2009 WL 114644, at *13 (E.D.N.Y. Apr. 28, 2009) (exercising discretion to stay litigation during compelled arbitration); *Douce v. Origin ID TMAA 1404-236-5547*, No. 08-CV-0483 (DLC), 2009 WL 382708, at *5 (S.D.N.Y. Feb. 17, 2009) (exercising discretion to stay pending arbitration rather than dismiss "[t]o promote expeditious resolution of th[e] dispute").

National Labor Relations Act ("NLRA") – is within the scope of a deferral letter from the NLRB, which states that the plaintiffs have agreed to proceed to arbitration on that issue. Therefore, defendant argues that this Court should not consider plaintiffs' defamation claim. For the reasons set forth below, this Court agrees, but concludes that the claim should be stayed, rather than be dismissed, at this juncture.

On August 13, 2008, defendant filed a Charge Against Employer against plaintiffs with the NLRB alleging, among other things, that:

> [o]n or about 5/23/08 through and including 5/26/08, the employer through its agents, threatened, harassed, coerced, and/or disciplined Local 342 members for exercising their right to distribute handbills/leaflets during non-work time in non-work areas, in violation of the collective bargaining agreements, and the Act. On or about 5/23/08 through and including 5/26/08, the employer through its agents, threatened, harassed, coerced and/or disciplined Local 342 members for exercising their right to distribute handbills/leaflets to customers containing protected speech (during non-work time, non-work areas), in violation of the collective bargaining agreements and the Act.

(O'Leary Aff. Ex. 9, Attachment B.) On September 26, 2008, the NLRB issued a letter deferring the charge to arbitration. (O'Leary Aff. Ex. 10.) In laying out the issues to be deferred, the NLRB included "whether the Employer has discriminated against employees for engaging in union or *protected activity* on May 23 through May 26, 2008."

(*Id.*) (emphasis added). On October 22, 2008, defendant filed a demand for arbitration, which led to a hearing in January 2009.

Although plaintiffs attempt to argue that the protected activity is not before the arbitrators, the Court finds that argument unpersuasive. The language in both the charge and the NLRB deferral letter makes clear that the issue of whether the employees were engaged in protected activity, which is also the core issue for any defamation claim, is within the scope of the arbitration. *See, e.g., Agee v. Huggins*, 888 F. Supp. 1573, 1584-85 (N.D. Ga. 1995) (holding that, although plaintiff argued that NLRB's deferral for arbitration letter did not include plaintiff's allegations regarding defendant's defamatory statements, "[b]ased upon a review of the record, the Court finds that the factual allegations that form the basis for Plaintiff's Complaint are the same claims that were deferred to arbitration by the NLRB . . ."). In fact, at oral argument, plaintiffs' counsel argued that the arbitrator may not need to reach the "protected speech" issue if the employees were on a lawful break, but acknowledged that it also was possible that although the arbitrator might need to address that precise issue.[5] (*See* Transcript of Oral

---

[5] Defendant also points out that both the disciplinary notices and the arbitrator decisions confirm that the issue of protected speech/defamation are within the scope of the NLRB deferral to arbitration. First, defendants note that the disciplinary notices given to employees were placed into evidence during the arbitration hearing and make clear that plaintiffs were disciplining the employees, in part, because the handbills were allegedly defamatory. (*See* Supp. Aff. of Wincott, Ex. 2 (notices state that employees were disciplined for "pass[ing] out leaflets that w[ere] disparaging to the company after having been told not to do so").) Second,

9

Argument, June 9, 2009, at 20-22.) Under the particular circumstances of the instant case – where the NLRB issued a deferral of the question as to whether the handbill/leaflet and the disciplining of Union members as a result of such were protected activity and conduct under the NLRA, and the employer has agreed to proceed to arbitration on that issue – this Court concludes that it should stay this lawsuit until the matter has been arbitrated under the jurisdiction of the NLRB. Despite plaintiffs' argument that the issue of defamation is not before the NLRB, the issue of whether the handbilling was protected clearly is, and should not be litigated here at this juncture. At a minimum, the issue of whether the statements are defamatory is intertwined with the issue of whether the activity was protected, and since it is undisputed that the defamation issue *may* be determined by the pending arbitration proceedings, this Court possesses the discretionary authority to stay the action

pending the outcome of the arbitration proceedings. *Sierra Rutile Ltd. v. Katz*, 937 F.2d 743, 750 (2d Cir. 1991) ("It is appropriate, as an exercise of the district court's inherent powers, to grant a stay where the pending proceedings is an arbitration in which issues involved in the case may be determined.") (internal citation and quotation marks omitted); *see also Citrus Marketing Bd. of Israel v. J. Lauritzen A/S*, 943 F.2d 220, 225 (2d Cir. 1991) (stating that a district court has the power to grant a stay of litigation pending an arbitration, following from the "power inherent in every court to control the disposition of the cases on its docket with economy of time and effort for itself, for counsel, and for litigants"); *accord Orange Chicken, L.L.C. v. Nambé Mills, Inc.*, No. 00-CV-4730 (AGS), 2000 WL 1858556, at *8-9 (S.D.N.Y. Dec. 19, 2000).

Accordingly, this claim is stayed pending the determination of that issue in connection with the matter before the NLRB.

### IV. CONCLUSION

For the reasons set forth above, this lawsuit is stayed pending completion of the arbitrations and the charge before the NLRB. Counsel for plaintiffs is directed to file a status letter to the Court on October 30, 2009 advising the Court as to the status of the arbitrations and the NLRB charge.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: September 3, 2009
      Central Islip, NY

---

defendants point to the arbitrator's decision dated February 25, 2009 to demonstrate that the issue of whether the handbilling was "protected" is within the scope of the arbitration. Specifically, the arbitrator found "that the manner in which the leafletting was performed as well as, the actual handbilling is protected and those employees should not have had to face the threat of suspension for engaging in that activity." (Sur-Reply Aff. of Catalano, Ex. C at 14.) Third, defendants point to the arbitrator's decision dated June 16, 2009, which reached the same conclusion. (Arbitrator's Decision Dated June 16, 2009, at 47.) Specifically, the arbitration decision dated June 16, 2009 found that the handbill was not "offensive" to the plaintiffs. (*Id.* at 46.) However, this Court need not consider these other materials in deciding this motion because the NLRB charge and the deferral letter, by themselves, are sufficient to demonstrate that the protected speech issue, which is intertwined with the defamation claim, is within the scope of the NLRB deferral for arbitration.

\* \* \*

The attorneys for plaintiffs are Douglas Peter Catalano, Esq. and Neil G. Sparber, Esq. of Fulbright & Jaworski LLP, 666 Fifth Avenue, New York, New York 10103. The attorney for defendant is Ira D. Wincott, Esq. of the Law Office of Ira D. Wincott, 166 East Jericho Turnpike, Mineola, New York 11501.